### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **WALTER B. GABLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:11-CV-2428-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

### **MEMORANDUM OPINION**

Plaintiff Walter B. Gable ("Mr. Gable") seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Mr. Gable timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act.[1] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Gable was a forty-five (45) year old male at the time of his hearing before the Administrative Law Judge ("ALJ"). (R. at 4, 43.) He has a General Equivalency Degree ("GED"), which he obtain in 1999. (R. at 97.) He previously worked as a carpenter and laborer. (R. at 93, 111–18.)

Mr. Gable filed a claim for SSI on January 5, 2009, alleging disability beginning on November 15, 2006. (R. at 31.) He eventually amended his disability onset date to January 5, 2009. (*Id.*) His claim was initially denied on March 17, 2009. (*Id.*) Mr. Gable requested a hearing before an ALJ, who held a hearing on March 17, 2010. (*Id.*) The ALJ denied Mr. Gable's claim on July 28, 2010. Mr. Gable asked the Appeals Council to review the ALJ's decision, but it declined. (R. at 1.) Thereafter, Mr. Gable filed this lawsuit.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision

reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for SSI and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months." 20 C.F.R. § 416.905(a).[3] To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through August 30, 2012.

[3] The language of this section (as well as 20 C.F.R. § 416.920 cited below) was amended in 2012. The text of the new provision became effective on August 24, 2012. However, the textual changes in these provisions are irrelevant for purposes of this memorandum opinion.

anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

>   (1)   whether the claimant is currently employed;
>   (2)   whether the claimant has a severe impairment;
>   (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>   (4)   whether the claimant can perform his past work; and
>   (5)   whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further

show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

At Step One, the ALJ found that Mr. Gable has not engaged in substantially gainful activity since January 5, 2009. At Step Two, the ALJ found that Mr. Gable has the following severe impairments: Hepatitis C, cirrhosis of the liver, and asthma. (R. at 33.) The ALJ also found that Mr. Gable has the following nonsevere impairments: severe headaches, hypertension, chronic obstructive pulmonary disease ("COPD") or emphysema, and poor eyesight. (R. at 33–34.) At Step Three, the ALJ found that Mr. Gable does not allege that his impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appedix 1. (R. at 37.)

The ALJ next determined Mr. Gable's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. 20 C.F.R. § 416.945. The ALJ found that Mr. Gable could perform light work with the following limitations: occasionally lifting or carrying up to twenty (20) pounds, and frequently lifting or carrying up to ten (10) pounds; standing or walking (with normal breaks) for six (6) out of eight (8) hours; sitting (with normal breaks) for six (6) out of eight (8) hours; frequently bending, stooping, kneeling, crouching, and climbing ramps or stairs; and occasionally climbing ladders, ropes, and scaffolds. (R. at 38.) The ALJ

restricted Mr. Gable from working around "fumes, odors, dusts, gases and poor ventilation." (*Id.*)  In making his RFC determination, the ALJ largely and explicitly discredited Mr. Gable's subjective symptoms related to his impairments. (R. at 40–42.)

At Step Four, the ALJ determined that Mr. Gable cannot do his past work. At Step Five, the ALJ found that, in light of Mr. Gable's age, education, work experience, and RFC, jobs exists in sufficient numbers in the national economy such that Mr. Gable could still find work. (R. at 43.)  Thus, the ALJ determined that Mr. Gable is not disabled under the Act, and he denied Mr. Gable's claim.

## **ANALYSIS**

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Before this court, Mr. Gable complains that the ALJ erred in determining his RFC.  Specifically, Mr. Gable complains that the ALJ (1) erred in finding that some of his impairments are nonsevere, and (2) failed to consider all of Mr. Gable's impairments, including pain, in determining his RFC.  Additionally, Mr. Gable complains that the ALJ's hypothetical question to the vocational expert ("VE") did not include all of Mr. Gable's impairments.  For the reasons that follow, this court finds no reversible error and affirms the decision of the Commissioner.

**A. The ALJ's Decision Regarding Mr. Gable's Severe and Nonsevere Impairments is Supported by Substantial Evidence**

An impairment is severe if it significantly restrict a claimant's ability to do basic work activities.  *See* 20 C.F.R. §§ 416.920(c) & 416.921.  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.908.  Subjective statements unsupported by medical evidence are insufficient to establish an impairment.  *Id.*

In this case, the ALJ found that Mr. Gable's alleged impairments of severe headaches, hypertension, COPD, and poor eyesight are nonsevere.  This finding is supported by substantial evidence.  First, the ALJ found little evidence of treatment for severe headaches.  (R. at 34.)  Furthermore, Mr. Gable's headaches appear

controlled with medication (R. at 237, 243–44), and he has reported long periods without headaches (R. at 261) (no headaches for three months). Second, Mr. Gable's hypertension (which caused dizzy spells) appears well-controlled by medication. (R. at 34, 237, 242, 261, 287.) The ALJ found only one incident of fainting related to Mr. Gable's hypertension, and that incident resulted from an accidental overdose of his medication. (R. at 34,193.) Third, Mr. Gable's respiratory system showed no significant restriction or limitation when tested in February 2009. (R. at 281–82.) The only respiratory medication in Mr. Gable's medical records regards his asthma, not COPD. And, though Mr. Gable complained to his doctors about COPD beginning in 2008, those doctors have no record of his diagnosis with COPD. (R. at 34–35.) Nor did Mr. Gable present evidence of a COPD diagnosis to the ALJ (or this court). Finally, the ALJ found that Mr. Gable's complaints of poor eyesight are unsubstantiated by the medical record. (R. at 35.) Though Mr. Gable has complained of poor eyesight in the past, there is no evidence of testing or treatment for this condition. Moreover, his daily activities are inconsistent with his claim of poor eyesight. (R. at 35–36.)

Similarly, the ALJ found that Mr. Gable's alleged mental impairments are nonsevere. This finding is also supported by substantial evidence. The ALJ noted that Mr. Gable has repeatedly denied depression during his medical exams and that

his doctors described him as alert and oriented. (R. at 36–37, 237, 243, 261, 265.) The ALJ also cited Mr. Gable's appearance and demeanor at his hearing. The ALJ found him alert, responsive, and possessing good recall of important information. (R. at 37.) His speech was "intelligible," "logical," and "coherent." (*Id.*) Furthermore, Dr. Robert Estock (a state-agency consultant) found that Mr. Gable's mental impairments are not severe. (R. at 175.) The ALJ credited Dr. Estock's findings. The ALJ also credited Dr. Mary Arnold's findings to the extent they support Dr. Estock's assessment.

The ALJ discredited Dr. Arnold's Global Assessment of Functioning ("GAF") score of 59 (suggesting moderate mental limitations) for two reasons. First, Dr. Arnold's observations suggested only mild limitations due to any mental condition.[5] She reported that Mr. Gable was alert, oriented, well groomed, well dressed, and presented no deficits in abstract reasoning, thought processing, thought content, or judgment. (R. at 37, 161.) Second, the ALJ doubted Mr. Gable's effort and frankness

---

[5] "GAF scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational, or school settings. GAF scores between 61 and 70 reflect mild symptoms, with some difficulty in social and occupational functioning." *Wind v. Barnhart*, 133 F. App'x. 684, 687 (11th Cir. 2005) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed.2000)).

during his examination. For example, Dr. Arnold reported that Mr. Gable was marginally compliant and a "guarded informant." (R. at 162.) The ALJ interpreted these notations, in light of Dr. Arnold's observations, as indicative of "questionable motivation/cooperation" from Mr. Gable. (R. at 37.) The ALJ cited Mr. Gable's questionable motives as a key reason for discrediting the GAF score of 59. (R. at 37.)

As described above, the ALJ's findings regarding Mr. Gable's severe and nonsevere impairments are supported by substantial evidence and, therefore, are due to be affirmed.

## B. The ALJ Properly Considered Mr. Gable's Impairments in Determining His RFC

Mr. Gable contends that the ALJ failed to consider all of his impairments, including pain, in determining his RFC. A claimant's RFC is the most he can still do despite his impairments. 20 C.F.R. § 416.945(a)(1). In determining a claimant's RFC, the ALJ must consider "the limiting effects of all [his] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). The RFC determination includes an assessment of a claimant's subjective symptoms, such as pain. (*Id.*) However, subjective symptoms, such as pain and fatigue, are only considered to the extent they are supported by the medical record. *See* 20 C.F.R. §§ 416.908 & 416.929; *see also* SSR 96-3p, 1996 WL 374181 at *2.

Moreover, the ALJ may discredit a claimant's allegations of his subjective symptoms. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Tieniber v. Heckler*, 720 F.2d 1251, 1254 (11th Cir. 1983). If an ALJ discredits a claimant's testimony regarding the severity of his symptoms, the ALJ must "articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

In this case, the ALJ considered Mr. Gable's alleged subjective symptoms, including fatigue, respiratory problems, and pain.[6] (R. at 39–40.) The ALJ found that Mr. Gable's underlying medical conditions (*i.e.*, his severe and nonsevere impairments) could reasonably be expected to produce these symptoms, but that Mr. Gable's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (R. at 40.)

The ALJ explicitly articulated numerous and adequate reasons to discredit Mr. Gable's allegations of subjective symptoms. First, the ALJ found Mr. Gable's

---

[6] Mr. Gable argues that the ALJ failed to consider his allegations of pain. Pl.'s Br. at 8. However, Mr. Gable has failed to point out to this court any allegations of pain which the ALJ did not address. Further, the court examined Mr. Gable's testimony before the ALJ and finds that the ALJ addressed all of Mr. Gable's allegations of pain or other subjective symptoms.

treatment history to be inconsistent with the alleged severity of his symptoms. Specifically, the ALJ noted that Mr. Gable only started seeing a doctor for his alleged symptoms in 2008 and denied seeing a doctor for three or four years before that time. (R. at 40.)  The ALJ also noted that Mr. Gable had not yet started treatment for his Hepatitis C, even though he was diagnosed more than a year earlier. (*Id.*)  Second, the ALJ found that Mr. Gable's daily activities are inconsistent with his allegations of disabling fatigue. (R. at 39, 41.) For example, Mr. Gable claims he sweeps, mops, and picks up after his nephews. (R. at 36, 123, 162.) He cared for his sister while she recovered from a broken leg. (R. at 11, 41, 121.) He walks thirty (30) minutes to the post office and does chores for his mother, such as replacing a door. (R. at 162.) Mr. Gable also goes to his friend's home to watch TV (*id.*), takes care of the family pets (R. at 122), and mows the lawn with a riding mower (R. at 123). The ALJ found that the inconsistencies between Mr. Gable's alleged symptoms and his daily activities negatively impacted his credibility.

      Third, at his hearing, Mr. Gable testified that his lower legs often swell and require him to prop them up. (R. at 17.) The ALJ found a complete absence of support for this allegation in Mr. Gable's medical history. (R. at 41.) Because the ALJ found this allegation not credible, he doubted the sincerity of Mr. Gable's other allegations. (*Id.*)  Fourth, the ALJ noted Mr. Gable's evasiveness in answering

questions at his hearing and with his physicians. (*Id.*) In particular, the ALJ noted Mr. Gable's inconsistent reporting of his substance abuse to his treating doctors. (*Id.*) Additionally, the ALJ noted that Mr. Gable's work history, which showed that he often failed to report his income and pay taxes, further decreased his credibility. (R. at 42.)

Having largely discredited Mr. Gable's subjective symptoms, the ALJ considered his ability to work despite his credible impairments. (R. at 40.) Because the ALJ properly considered the total limiting effects of all of Mr. Gable's impairments, *see* 20 C.F.R. § 416.945(e), the ALJ did not err in determining his RFC.

**C. The ALJ Presented a Proper Hypothetical to the Vocational Expert**

The ALJ must present a comprehensive hypothetical to the VE. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Here, the ALJ's hypothetical adequately encompassed Mr. Gable's RFC as determined by the ALJ. (R. at 23, 37.) Because the ALJ's properly determined Mr. Gable's RFC, *see* <u>Anaylsis</u>, A & B *supra*, this argument necessarily fails.

## CONCLUSION

For the forgoing reasons, the decision of the Commissioner is due to be **AFFIRMED.**

**DONE** and **ORDERED** this the 6th day of September, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge